IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERRY D. DAVIDSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-178-KEW |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| and KIVELL, RAYMENT & | ) | |
| FRANCIS, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Bank of America's Motion to Dismiss the Complaint of Plaintiff Jerry D. Davidson, Jr. and Brief in Support (Docket Entry #10), Defendant Kivell, Rayment & Francis, P.C.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry #11), and Plaintiff's Motion to Remand (Docket Entry #14).

On October 14, 2015, Bank of America, N.A. ("BANA"), through its counsel Kivell, Rayment & Francis, P.C. ("KRF"), filed a Petition for Foreclosure of Mortgage in LeFlore County District Court in Case No. CJ-2015-180 (the "2015 Foreclosure Action").[1] On February 3, 2016, the state court entered the Final Journal Entry of Judgment ("foreclosure judgment") against Plaintiff Jerry D.

_____
[1] The Court takes judicial notice of the public filings in the 2015 Foreclosure Action, because they are part of the public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Davidson, Jr., in the 2015 Foreclosure Action. The state court made findings that (1) Mr. Davidson was personally served with summons as required by law, failed to answer or otherwise plead or appear, and was therefore in default, (2) Mr. Davidson had executed and delivered the note and mortgage sued upon by BANA, and BANA was the holder thereof, and (3) Mr. Davidson defaulted on the terms and conditions of the note and mortgage, entitling BANA to foreclosure of the mortgage. The state court entered judgment against Mr. Davidson in favor of BANA in the amount of $117,560.54, plus interest, an attorney fee of $1,750.00, and costs associated with the action. It ordered that a Special Execution and Order of Sale be issued by the district court clerk and directed the sheriff to advertise and sell the subject property. Petition, pp. 26-31 (Docket Entry #2-2, Exhibit A).

Plaintiff did not appeal the foreclosure judgment, but he instead filed a separate Petition in Case No. CJ-2018-102 on May 18, 2018, pursuant to Okla. Stat. tit. 12, §§ 1031(4), 1033, requesting that the state court vacate and set aside the foreclosure judgment. Petition, p.3, ¶ 9 (Docket Entry #2-2). He alleges it was BANA who obtained the foreclosure judgment against him and it was KRF who filed the foreclosure action and obtained

the foreclosure judgment from the state court on BANA's behalf. *Id.*, p. 2, ¶¶ 3,5. Plaintiff further asserts claims against Defendants BANA and KRF for malicious use of process/fraud on the court, fraud and deceit, intentional infliction of emotional distress, civil conspiracy, and violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.*, pp. 3-24.

On June 8, 2018, BANA removed the action to this Court under 28 U.S.C. § 1331, based upon federal question jurisdiction over Plaintiff's RICO claim, and under 28 U.S.C. § 1367(a), based upon supplemental jurisdiction over Plaintiff's state law claims. The Notice of Removal states that KRF consented to the removal.

Following the removal of the action, BANA and KRF filed their Motions to Dismiss. BANA seeks dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). BANA argues Plaintiff failed to meet the pleading standard required under Fed. R. Civ. P. 8, the pleading with particularity requirement for fraud under Fed. R. Civ. P. 9, and arguments of collateral estoppel. Although KRF also filed a Motion to Dismiss, it wholly adopted the arguments made by BANA in support of its Motion to Dismiss.

Shortly after Defendants filed their Motions to Dismiss, Plaintiff timely filed his Motion to Remand. Plaintiff seeks remand of the case to state court arguing that his state law claims are separate and independent from his federal RICO claim. Plaintiff also argues that the entire case, including his RICO claim, should be remanded because the federal RICO claim is "factually tethered" to his state law claims. Although Plaintiff does not specifically raise the argument that this Court lacks subject matter jurisdiction over the claims raised in his Petition, the Plaintiff does argue that the case should be remanded because the state court is the only court with the authority to vacate the foreclosure judgment.

A question of subject matter jurisdiction may be raised at any time, by either a party or *sua sponte* by the Court. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'"), quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 1240, 163 L. Ed. 2d

4

1097 (2006). Although no party explicitly raises the issue of this Court's subject matter jurisdiction over Plaintiff's claims raised in the Petition, the Court raises the issue *sua sponte*, specifically, whether the *Rooker-Feldman* doctrine precludes this Court from exercising subject matter jurisdiction in this case.

The Court must first consider the question of subject matter jurisdiction before addressing the merits of Defendants' Motions to Dismiss. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (noting that a district court has no authority to rule on the merits of a claim if it lacks jurisdiction). If the *Rooker-Feldman* doctrine applies, this Court is precluded from even considering the applicability of defenses, including *res judicata* and collateral estoppel. *See Long v. Shorebank Development Corp.*, 182 F.3d 548, 554-55 (7th Cir. 1999) ("The *Rooker-Feldman* doctrine is jurisdictional in nature; its applicability must be determined before any other affirmative defense.").

The *Rooker-Feldman* doctrine "is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). "Under the *Rooker-Feldman* doctrine, lower

federal courts lack jurisdiction to hear claims that are either (1) actually decided by a state court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), or (2) 'inextricably intertwined' with a prior state court judgment, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)." *Dickerson v. Bates*, 104 Fed. Appx. 699, 700 (10th Cir. 2004); *see also PJ ex. rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010).

In *Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012), the Tenth Circuit Court of Appeals determined that "trying to untangle the meaning of *inextricably intertwined*" was unnecessary because "[t]he essential point is that barred claims are those 'complaining of injuries caused by state-court judgments.' In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id*. at 1283, quoting *Exxon-Mobil Corp. v. Saudi Basic Industrial Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *see also Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004)("While 'inextricably intertwined' is a somewhat metaphysical concept, the 'crucial point is whether the district court is in essence being called upon to review the state-court decision.'"),

6

quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993), quoting *Feldman*, 460 U.S. at 483-84 n.16 (1983); and *PJ ex rel. Jensen*, 603 F.3d at 1194 (finding that *Rooker-Feldman* applies if success on the claims alleged in federal court would require the federal court to review and reject the state court's judgment).

As an initial matter, in order for the *Rooker-Feldman* doctrine to apply, the challenged order or judgment must be final. *See D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.7 (10th Cir. 2013). Here, the foreclosure judgment was appealable, and it became final when Plaintiff failed to appeal it. *See Federal Deposit Ins. Corp. v. Tidwell*, 820 P.2d 1338, 1341 (Okla. 1991) (noting that the judgment in a foreclosure proceeding "is the order determining the amount due and ordering the sale to satisfy the mortgage lien[,]" that "in order to appeal errors in a judgment of foreclosure it was necessary to appeal from that judgment[,]" and that "a judgment of foreclosure could not be attacked in the context of a motion to confirm a sale but that the parties remaining remedy in attacking the judgment at that point in the proceedings was by vacating the judgment.") (citations omitted). The foreclosure judgment entered on February 3, 2016, determined the amount due on the mortgage, determined that BANA

7

was entitled to foreclose on the mortgage, and ordered the sale of Plaintiff's property. *See* Petition, pp. 26-32 (Docket Entry # 2-2, Exhibit A).

Under Oklahoma law, a district court has the power to vacate or modify its judgments or orders . . . "[4] [f]or fraud, practiced by the successful party, in obtaining a judgment or order[.]" Okla. Stat. tit. 12, § 1031(4). Because more than thirty days passed after the filing of the foreclosure judgment, *see* Okla. Stat. tit. 12, § 1031.1(B), Plaintiff was required to adhere to the requirements of Section 1033, *see* Okla. Stat. tit. 12, § 1031.1(C), and he filed a Petition, which commenced a new civil action, Case No. CJ-2018-102. *See* Okla. Stat. tit. 12, § 1033 ("If more than (30) days after judgment . . . has been filed, proceedings to vacate or modify the judgment . . ., on the grounds mentioned in paragraph[] . . . 4 . . . of section 1031 of this title, shall be by petition, verified by affidavit, setting forth the judgment . . ., the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On this petition, a summons shall issue and be served in the commencement of a civil action."). Plaintiff attempted to attack the foreclosure judgment by the only means available, by seeking to vacate the foreclosure

judgment on the basis of fraud, pursuant to Sections 1031(4) and 1033 of the Oklahoma Statutes. Thus, for purposes of determining the applicability of the *Rooker-Feldman* doctrine to Plaintiff's claims, the Court finds the foreclosure judgment is final.[2]

Applying the principles of the *Rooker-Feldman* doctrine to Plaintiff's claims before this Court, the allegations of Plaintiff's Petition appear to satisfy both prongs under *Rooker-Feldman*. First, it is clear from Plaintiff's Petition that his intent is to directly attack the state court's foreclosure judgment. In the Petition, Plaintiff specifically seeks for the state court to "vacate and set aside a foreclosure judgment for fraud on the court, and for malicious abuse of process, fraud and deceit, and the intentional infliction of emotional distress, RICO and civil conspiracy[.]" Petition, p. 1 (Docket Entry #2-2).[3] Plaintiff also asserts that it is the foreclosure judgment and sheriff's sale of his property that is the subject of his "Petition

_____

[2]     Although Section 1038 provides time provisions for when such actions shall be filed when pursuing vacation or modification of a judgment or order on the basis of fraud, *see* Okla. Stat. tit. 12, § 1038, as discussed herein, because this Court determines that it lacks subject matter jurisdiction over the action, the Court will not decide whether Plaintiff's Petition is timely under Section 1038.

[3]     In the Motion to Remand, Plaintiff clarifies that he has alleged a cause of action for civil conspiracy under Oklahoma law.

to Vacate for Fraud on the Court." *Id.*, pp. 1-2, ¶ 1. He seeks vacation of the foreclosure judgment and sheriff's sale of the property to BANA pursuant to Okla. Stat. tit. 12, §§ 1031, 1033. *Id.*, p. 3, ¶ 9.

Moreover, at the heart of Plaintiff's Petition are allegations that Defendant BANA and KRF committed fraud on the state court and the allegation that BANA was not the proper holder of the note and was therefore unable to properly foreclose on the property at issue. Specifically, Plaintiff alleged the following:

> 10.  [BANA] falsely claimed in the foreclosure petition that it filed in Case CJ 2015-180 that the non-negotiable promissory note that is the subject of the February 3, 2016 Final Journal Entry of Foreclosure entered in that action was assigned to [BANA].
>
> *     *     *
>
> 19.  Defendant [BANA] knew at the time that it filed the Petition with this court in Case CJ 2015-180 that the Bank's claim that it held the promissory note was false and the Bank knew when it attached the MERS assignment to its petition that MERS had no interest in the promissory note and that the MERS assignment did not assign or otherwise transfer the promissory note to the Bank.
>
> *     *     *
>
> 29.  [BANA] and [KRF] joined in a special combination of effort and cooperation and investment to practice fraud on the court in Case CJ 2015-180 which resulted in the court entering the February 3, 2016 foreclosure in [BANA's] favor.

                          *     *     *

35.  The filing of the fraudulent MERS assignment and
the allegation that [BANA] was the holder of the
promissory note in Case CJ 2015-180 constitute illegal
and malicious use of process.

36.  The court is hereby requested to vacate the
February 3, 2016 foreclosure judgment because the
judgment was obtained by [BANA] as a direct result of
the fraud that the Bank and the Law Firm practiced on
the court.

37.  [BANA] and [KRF]'s fraud on the court practiced
through the filing of a false claim that the Bank was a
holder of the promissory note based on the void MERS
assignment attached to the petition that the Bank filed
in Case CJ 2015-180 permeated the entire 2015
foreclosure proceeding and subverted the integrity of
the action for an illegal and unworthy purpose.

38.  [BANA] and [KRF]'s abuse of the Oklahoma civil
legal process described in this petition to vacate
judgment is a substantial basis justifying the vacation
of the February 3, 2016 foreclosure judgment by this
court.

39.  The vacation and setting aside of the February 3,
2016 Journal Entry of Judgment and dismissal of the 2015
foreclosure action filed by [BANA] with prejudice is
warranted and essential to promote the ends of justice
and to sanction the Bank for its fraud on the court.

                          *     *     *

41.  Plaintiff Davidson is directly harmed and
exceptionally prejudiced by the fraud on the court
practiced by [BANA] and [KRF] in Case CJ 2015-180 which
fraud resulted in the entry of the February 3, 2016
foreclosure judgment.

42.  This court has jurisdiction to grant this petition
to vacate the February 3, 2016 foreclosure judgment as
being void for fraud on the court and to deny

                             11

confirmation of and to vacate the sheriff's sale of the
subject property scheduled for confirmation hearing on
June 6, 2018.

*     *     *

44.   Plaintiff Jerry Davidson owns and resides in the
residential property that is subject to the note and
mortgage that is foreclosed by the February 3, 2016
foreclosure judgment and he is the named Defendant in
Case CJ 2015-180.

Petition, pp. 3-10 (Docket Entry #2-2).

The case law is clear that "allegations of fraud in the state
court proceeding do not prevent application of the *Rooker-Feldman*
doctrine to bar those fraud claims." *Jester v. Wells Fargo Bank
N.A.*, 297 F.Supp.3d 1233, 1242 (E.D. Okla. 2018), citing *Tal v.
Hogan*, 453 F.3d 1244, 1256-57 (10th Cir. 2006). *Rooker-Feldman*
applies when a federal court is asked to declare a state court
judgment void or to vacate the judgment based upon fraudulent
conduct in the state court matter. *Id*. at 1245 ("[T]he *Rooker-
Feldman* doctrine prohibits a federal court from reviewing fraud
allegedly committed in a state court. Accordingly, *Rooker-Feldman*
prohibits this Court from voiding the 2012 Foreclosure judgment
and relitigating issues that were decided or should have been
raised in the state court proceedings, even if fraud on the court
is alleged."); *see also Farris v. Burton*, 686 Fed. Appx. 590, 593
(10th Cir. 2017) ("We agree with the district court's conclusion

that as long as the state-court judgment stands—collateral attacks based on a party corrupting the state judicial process are properly brought only in state court.") (quotation omitted), citing *West v. Evergreen Highlands Ass'n*, 213 Fed. Appx. 670, 674 n.3 (10th Cir. 2007) ("This circuit has not held that *Rooker-Feldman* may be circumvented by a collateral attack of the sort suggested in the cases discussed above. There is good reason to balk at such a step. State rules of procedure provide various means to attack a wrongfully obtained judgment. Construing *Rooker-Feldman* to permit federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under [28 U.S.C.] § 1257.") (internal citation omitted).

Plaintiff's allegations are contrary to the foreclosure judgment in the 2015 Foreclosure Action. The foreclosure judgment explicitly states that "[t]he Court further finds that the Defendant, Jerry D. Davidson, Jr., made, executed and delivered the Note and Mortgage sued upon by Plaintiff [BANA]; and that said Plaintiff [BANA] is the holder thereof [and . . . ] Plaintiff [BANA] is entitled to the foreclosure of the [m]ortgage sued upon

in this cause[.]" Petition, pp. 27-28 (Docket Entry #2-2, Exhibit A). Thus, for this Court to grant the relief requested by Plaintiff Davidson, a review and rejection of the foreclosure judgment would be unavoidable. *See Facio v. Jones,* 929 F.2d 541, 543 (10th Cir. 1991) (holding that a plaintiff's federal action seeking to "vacate" a state court judgment was a de facto appeal and therefore barred under *Rooker-Feldman*); *see also Taylor*, 374 F.3d at 533 ("[T]he relief granted when a claim of fraud on the court succeeds is that the party claiming fraud is relieved from the judgment, i.e., the judgment is set aside."). This Court is precluded from doing so under the *Rooker-Feldman* doctrine.

Second, the *Rooker-Feldman* doctrine also applies to Plaintiff's RICO claim because it is "inextricably intertwined" with the state court's foreclosure judgment.[4] Numerous allegations in the Petition demonstrate the degree to which the claim is

---

[4]      Because Plaintiff's federal RICO claim was the basis for BANA's removal of the action under 28 U.S.C. § 1441(a), the Court's focus is on whether it has subject matter jurisdiction over that claim. A district court may exercise supplemental jurisdiction to consider state-law claims only if it has subject matter jurisdiction over the federal-law claims. *See 1mage,* 459 F.3d at 1048 n.6 ("1mage also asserted a trade-secrets claim, but it did so under Colorado law. The district court would have had supplemental jurisdiction to consider this Colorado law claim, only if it had subject matter jurisdiction in the first place. . . . So the question of whether the district court had subject matter jurisdiction to consider 1mage's action turns solely on 1mage's claim asserted under the federal Copyright Act.") (internal citation omitted).

"inextricably intertwined" with the state court's foreclosure
judgment:

> 69. Defendants initiate and file fraudulent documents
> in foreclosures, and did so against this Plaintiff in
> Case 2015-180 in order to obtain a foreclosure judgment
> without legal authority or right.

> 70. Defendant Law firm acts in support of [BANA] taking
> the role of a Plaintiff in foreclosures and in the filing
> of false documents in furtherance of their scheme to
> perpetrate a fraud on the court and to defraud the
> Plaintiff.

> *   *   *

> 73. Defendants conspired together to perpetrate a fraud
> on Plaintiff and the court to convert Plaintiff's
> property through an ill-gotten judgment of foreclosure
> and sheriff's sale.

> 74. The object of the Scheme of the enterprise was to
> conceal, cover-up and adulterate documents that concern
> [BANA]'s lack of enforceable interest in or ownership of
> the note in Case CJ 2015-180 and the Bank's lack of right
> to foreclose the mortgage secured by the Plaintiff's
> property.

> 75. The object of the scheme of the associated-in-fact
> enterprise was to file a fraudulent assignment to
> conform to the requirements of Oklahoma law in order to
> obtain February 3, 2016 foreclosure judgment by artifice
> and deceit on the court and on the Plaintiff.

> *   *   *

> 80. But for the filing of the fraudulent documents,
> [BANA] could not substantiate its right to enforce the
> note or to foreclose the mortgage secured by the
> Plaintiff's home, which rights Defendants had to
> establish in order to obtain the foreclosure of the
> mortgage secured by the Plaintiff's property in

15

accordance with the goals of the illegal Scheme
described herein.

\*   \*   \*

86.  Defendants, individually and through their joint
venture have committed fraud on the court and other
illegal conduct and acts which have placed a cloud and
has slandered the Plaintiff's title to his home.

87.  Plaintiff is forced to incur legal expenses for
costs and attorneys' fees in order to institute and
prosecute this action to remove the associated-in-fact
Enterprise's illegally acquired foreclosure judgment and
to restore Plaintiff's ownership of his home free of any
claim of [BANA].

\*   \*   \*

93.  As a direct and proximate result of the conspiracy,
the overt acts taken in furtherance of that conspiracy,
and violations of 18 U.S.C. § 1962(d), the Plaintiff
sustained financial damage that includes the loss of his
property through a sheriff's sale. Plaintiff also is
suffering as a result of the fraudulently procured
foreclosure judgment which judgment was premised
entirely on the fraudulent submissions of the Defendants
to the foreclosure court. The Plaintiff's injuries were
sustained 'by reason of' the Defendants' RICO violations
complained of herein.

\*   \*   \*

101.  Defendants conduct involves large-scale crimes and
fraud including the following predicate acts:

   a.    submitting false evidence in the subject
   foreclosure action in violation of Okla. Stat.
   Ann. tit. 21, § 451;

   b.    suborning the filing of false documents in
   violation of Okla. Stat. Ann. tit. 21, § 504;

16

c.    inducing the filing of false documents in
violation of Okla. Stat. Ann. tit. 21, § 496;

d.    aiding and abetting the use of false
instruments concerning real property, in violation
of Okla. Stat. Ann. tit. 21, § 1500;

e.    aiding and abetting each other and the
joint venture in the malicious use of process
against this Plaintiff;

f.    preparing and submitting false documents in
the subject foreclosure to the court and the
transmission of same through the mails; and

g.    committing, facilitating and practicing
fraud on the court.

*    *    *

107.  Defendants joined together and committed fraud on
the court and deceived the judicial system to acquire
the sale and ownership of the Plaintiff's home.

108.  Defendants' crimes harmed this Plaintiff, as their
victim; he has had to retain counsel and he has incurred
pecuniary losses intertwined with the injury to his
property interest which damages are recoverable against
the Defendants under § 1964(c). Defendants' crimes also
have a larger effect on society beyond that of the normal
criminal offense.

Petition, pp. 15-21 (Docket Entry #2-2).

The Tenth Circuit Court of Appeals has considered RICO claims

in the context of the *Rooker-Feldman* doctrine. In *Dickerson v.*

*Bates*, 104 Fed. Appx. 699 (10th Cir. 2004), the Tenth Circuit

addressed a RICO claim associated with a landlord-tenant dispute.

The plaintiff brought suit in federal court alleging violation of

RICO based upon the defendants allegedly defrauding him by obtaining and collecting various judgments against him in the state-court dispute. Specifically, he claimed the defendants caused his injuries, not the state-court judgment, because they "defrauded him and engaged in criminal acts in obtaining and enforcing the judgments[.]" *Id.* at 701. However, the court rejected the plaintiff's argument and found that "[a]lthough he asks us to believe otherwise, he is, in fact, asking a federal district court to undo state-court judgments and restore him to the position he was in before these judgments." The court determined it lacked jurisdiction over the plaintiff's RICO claim under the *Rooker-Feldman* doctrine because the claim was "inextricably intertwined" with the state court judgment. *Id.; see also Bradshaw v. Gatterman*, 658 Fed. Appx. 359, 362-63 (10th Cir. 2016) (addressing violations of RICO, RICO conspiracy, violations of Sections 1981 and 1983, abuse of process, and tortious interference and finding that "[t]he requested relief plainly strikes at the state court's judgment, or, at the very least, are inextricably intertwined with it.").

Moreover, in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), the Tenth Circuit determined that the *Rooker-Feldman* doctrine precluded the plaintiff's RICO claims based upon allegations that

the defendants engaged in a conspiracy to condemn the plaintiff's property through fraud in a state condemnation proceeding. *Id*. at 1255-56. The court noted that the appropriate forum to challenge an error in a state court judgment was the state court. *Id*. at 1256 n. 11, *citing Rooker*, 263 U.S. at 415. The Tenth Circuit also discussed that to survive application of *Rooker-Feldman* to their RICO claim, the plaintiffs could not rely on the alleged fraudulent condemnation as the predicate act. *Id*. at 1262 n.19. The court found that "[w]e cannot consider the condemnation as a possible predicate act without calling into question the validity of the state court judgment." *Id*. It determined that "Tal, Inc.'s allegation that the condemnation was fraudulent and constituted a predicate act for RICO purposes is inextricably intertwined with the state court judgment and precluded by *Rooker-Feldman*." *Id*.

Further, in the case of *Tso v. Murray*, 760 Fed. Appx. 564 (10th Cir. 2019), the Tenth Circuit again addressed application of the *Rooker-Feldman* doctrine to a RICO claim. Relying on its decision in *Campbell*, the court determined:

> "Tso's Complaint seeks relief from alleged harms flowing from 'acts of the state court.' That is, 'the allegedly wrongful act that caused damage was the state-court order itself,' and his claims 'required a determination of the bona fides of the prior state-court judgment[.]' Though he complains of various acts taken by the defendants, whether through a RICO 'conspiracy' or

> denial of just compensation, the only harms alleged
> involved deprivations that resulted from the state
> courts' orders.  His claims are therefore barred by
> *Rooker-Feldman*."

*Id*. at 567-68, quoting *Campbell*, 682 F.3d at 1283-85.

As demonstrated by Plaintiff's allegations of RICO violations, including fraud and conspiracy, his RICO claim is "inextricably intertwined" with the foreclosure judgment. Moreover, the predicate acts alleged by Plaintiff in support of his RICO claim all call into doubt the validity of the foreclosure judgment. *See* Petition, pp. 19-20, ¶ 101 (Docket Entry #2-2). Thus, regardless of Plaintiff's allegations that Defendants caused his injury, there is no way for this Court to find a RICO violation by Defendants without finding that the foreclosure judgment was wrongfully entered. Accordingly, Plaintiff's RICO claim is barred by the *Rooker-Feldman* doctrine on this basis as well.

Although not for the reasons asserted by Plaintiff in his Motion to Remand, the Court has determined that it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and that remand to state court is required. Section 1447(c) states in pertinent part,

> (c) [a] motion to remand the case on the basis of
> any defect other than lack of subject matter
> jurisdiction must be made within 30 days after the filing
> of the notice of removal under section 1446(a).  If at
> any time before final judgment it appears that the

>district court lacks subject matter jurisdiction, the
>case shall be remanded.

28 U.S.C. § 1447(c). Section 1447(c) does not give the Court discretion to dismiss a case over which it lacks subject matter jurisdiction. *See Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005), citing *Brown v. Francis*, 75 F.3d 860, 866 (3d Cir. 1996) (stating that a court may not "exercise authority over a case for which it does not have subject matter jurisdiction"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557-58 (10th Cir. 2000) (stating that "§ 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction"). *See also Mills v. Harmon Law Offices*, *P.C.*, 344 F.3d 42, 46 (1st Cir. 2003) ("The existence of any subject matter jurisdiction defect divests the court of authority to dismiss a removed case on its merits, regardless of whether the jurisdictional flaw results from an improper removal or arises from some other source, such as the *Rooker-Feldman* doctrine.") (footnotes omitted).

This Court therefore finds that the state court's judgment includes the finding that BANA was the holder of the note and was entitled to a foreclosure of its mortgage sued upon in the case. This Court could not enter judgment in favor of Plaintiff and against BANA and/or KRF, without reviewing and rejecting the

foreclosure judgment entered by the District Court of LeFlore County. Moreover, the Court finds that Plaintiff's RICO claim against BANA and KRF is "inextricably intertwined" with the state court's foreclosure judgment, and it is therefore barred by *Rooker-Feldman* and the Court cannot exercise jurisdiction over the claim. Because the Court lacks subject matter jurisdiction over the federal claim, which was the basis for the removal, the Court likewise cannot consider the merits of Plaintiff's state law claims.

IT IS THEREFORE ORDERED that Defendant Bank of America's Motion to Dismiss the Complaint of Plaintiff Jerry D. Davidson, Jr. and Brief in Support (Docket Entry #10) and Defendant Kivell, Rayment & Francis, P.C.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry #11) are hereby **DENIED**, as both seek dismissal of Plaintiff's claims on the merits.  Plaintiff's Motion to Remand (Docket Entry #14) is hereby **GRANTED** solely for the reasons discussed herein.  This case is hereby **REMANDED** to the District Court of LeFlore County, Oklahoma, for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

IT IS SO ORDERED this 29th day of May, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE